## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MICHAEL H. LOTTO et al.,** | : | **Case No. 3:21-cv-1417(VLB)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JEREMY S. TENDLER et al.,** | : | |
| **Defendants.** | : | **May 12, 2022** |

### <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Despite overwhelming evidence of illegal activity taking place at the plaintiffs' residence at 9 North Bank Street in New Haven, the plaintiffs, Michael Lotto and Ernest Canteen, bring this three-count <u>Bivens</u> action claiming that the search of their property, pursuant to a facially valid search warrant signed by Magistrate Judge Merriam, and seizure of illegal contraband found therein, violated the plaintiffs' Fourth Amendment rights. The plaintiffs are wrong because even if the allegations of the complaint are taken as true, there was unquestionably sufficient evidence of illegal activity at the subject premises such that any reasonable magistrate would issue the search warrant, and at a minimum, the Postal Inspector who made the affidavit in support of the search warrant application reasonably would have believed there to have been sufficient probable cause.  As to the eleven other defendants who did not make the affidavit in support of the search warrant, the plaintiffs' unsupported and conclusory allegations of a failure to intercede cannot survive a motion to dismiss.

The plaintiffs also allege that the federal defendants sued in this case are responsible for the plaintiffs' allegedly malicious prosecution by the State of Connecticut.  But the plaintiff's claimed Sixth Amendment violation does not exist, and even if analyzed under the Fourth Amendment, the plaintiffs fail to plead either federal participation in the state's decision to prosecute the plaintiffs or favorable termination of the state's criminal charges (which remain pending for both of the plaintiffs).

Because the plaintiffs cannot plead facts sufficient to establish a clearly established violation of the plaintiffs' constitutional rights, all defendants are entitled to qualified immunity and dismissal of the complaint.

## I.    FACTUAL BACKGROUND

On October 25, 2021, the plaintiffs filed a three-count complaint against twelve federal officers alleging violations of the plaintiffs' federal constitutional rights arising out of a search and associated seizures of property at the plaintiffs' residence at 9 North Bank Street in New Haven.  In Count One, the plaintiffs allege that the defendants violated their Fourth Amendment rights to be free from unreasonable searches; in Count Two, the plaintiffs allege that the defendants violated their Fourth Amendment rights to be free from unreasonable seizures; finally, in Count Three, the plaintiffs claim that the defendants are liable for the plaintiffs' allegedly

wrongful prosecution by the State of Connecticut in violation of the Sixth Amendment.

The complaint alleges the following material facts.  The plaintiffs are two adult residents of 9 North Bank Street in New Haven, Connecticut. (Compl. ¶¶5-6.)  Between November 2017 and May 2018, Jason Smith, an inmate at Cheshire Correctional Institution, mailed threatening letters to the plaintiffs, extorting them for money that he ordered deposited in his inmate account.  (Id. ¶21.)  The plaintiffs did not comply, and the letters from Smith grew "increasingly threatening and extortionate."  (Id. ¶22.)

From March to May 2018, Smith mailed additional letters to the plaintiffs threatening to contact the United States Postal Service, Lotto's employer, and made false allegations of criminal conduct unless the plaintiffs paid Smith as he demanded.  (Id. ¶23.)  The plaintiffs again did not comply, and in late-April 2018, Smith mailed a letter to the Postal Service claiming, among other things, that the plaintiffs were operating a narcotics enterprise out of their home.  (Id. ¶24.)  The complaint alleges that these allegations were untrue.  (Id. ¶25.)

Upon receipt of Smith's letter, Jeremy Tendler, an Inspector with the United States Postal Inspection Service, opened an investigation into the plaintiffs.  (Id. ¶26.)  In connection with the investigation, law enforcement met with Smith on two occasions, at which time Smith repeated his allegedly false allegations about the plaintiffs.  (Id. ¶27.)  After Smith's

release from prison, law enforcement also used Smith on two occasions to make controlled purchases of narcotics from Canteen.  (Id. ¶30.)  As to the two controlled purchases, the complaint alleges first that "law enforcement failed to witness a hand-to-hand exchange between Smith and" Canteen, and second that "law enforcement witnessed Smith meeting and making a hand-to-hand exchange with an unidentified third party."  (Id. ¶¶31-32.)

Smith had an extensive criminal history of larceny, burglary, and identity theft, and he was compensated by law enforcement for providing the allegedly false information about the plaintiffs.  (Id. ¶¶28-29.)

On October 18, 2018, Tendler applied for a search warrant for 9 North Bank Street accompanied by a supporting affidavit.  (Id. ¶33.)  The complaint makes certain allegations about the contents of the affidavit, a copy of which is attached hereto as Exhibit A.[1]  (Id. ¶34.)  The complaint further alleges that Tendler intentionally omitted certain facts from his affidavit, namely: (1) Smith's criminal history; (2) Smith's "extortion scheme"; (3) that Smith's letter was the origin of Tendler's investigation;

---

[1] For purposes of deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995); see also id. (where complaint "relies heavily upon [a document's] terms and effect," it is integral to the complaint).

and (4) that Smith was compensated by unidentified law enforcement for his information.  (Id. ¶37.)

On October 18, 2018, Magistrate Judge Merriam issued the search warrant.  (Id. ¶40.)  The complaint alleges that inclusion of the allegedly omitted material "undoubtedly would have led any neutral and detached magistrate to discredit the information obtained from Smith and deny the search warrant application for lack of probable cause."  (Id. ¶43.)

The complaint alleges that the defendants executed the search warrant on October 25, 2018, and that the search did not locate counterfeit currency, black-tar heroin, or "substantial amounts of crystal methamphetamine" as Smith's letter claimed, and the search further did not uncover any evidence of Lotto using his position with the Postal Service to facilitate the delivery of narcotics to 9 North Bank Street.  (Id. ¶¶44-46.)

During the execution of the search warrant, Canteen was taken into custody and charged with various violations of Connecticut law.  (Id. ¶69.) Lotto was arrested sometime thereafter and similarly charged by the State of Connecticut.  (Id. ¶70.)

II.     LEGAL STANDARD

A.  Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face.  Mabry v. Neighborhood Defender Service, 769 F. Supp. 2d 381, 389 (S.D.N.Y. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)). "Although for the purpose of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The defense of qualified immunity is properly raised under Rule 12(b)(6).  McGarry v. Pallito, 687 F.3d 505, 508 (2d Cir. 2012).

### B.  Qualified Immunity

Government officials are immune from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The scope of qualified immunity is broad, and it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Martel v. Town of South Windsor, 562 F. Supp.

6

2d 353, 359 (D. Conn. 2008) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). The rationale is simple: "qualified immunity serves important practical purposes in our system. It shields government officials from liability for their performance of discretionary actions and offers them the benefit of avoiding costly, time-consuming and ultimately unsuccessful litigation." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002). In short, qualified immunity ensures that government officials can "act decisively without the intimidation that would result if good-faith errors in judgment were later to subject them to liability for damages." <u>Laverne v. Corning</u>, 522 F.2d 1144, 1149 (2d Cir. 1975).

Qualified immunity "can turn on either of two questions: whether the complaint alleges the deprivation of an actual constitutional right, or whether the right was clearly established at the time of the incident." <u>Ross v. Breslin</u>, 693 F.3d 300, 304 (2d Cir. 2012). "A 'no' answer to [any of these] question[s] requires judgment for the defendant." <u>Ross</u>, 693 F.3d at 304. On a motion to dismiss, qualified immunity shields federal officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.  <u>Vega v. Semple</u>, 963 F.3d 259, 273 (2d Cir. 2020).

Because qualified immunity provides "an immunity from suit rather than a mere defense to liability," <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526

(1985); the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam). Unless a plaintiff alleges a violation of clearly established law, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"Although Pearson frees a court from [a] 'rigid order of battle,' a court is still free to make a 'threshold inquiry' as to the violation of a constitutional right." 5 Borough  Pawn, LLC v. City of New York, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009) (citing Kelsey v. County of Schoharie, 567 F.3d 54, 60-61 (2d Cir. 2009)).

III.   ARGUMENT

A.  Search and Seizure Claims

1.  Tendler is Entitled to Qualified Immunity

The plaintiffs fail to plausibly allege that Tendler violated the plaintiffs' constitutional rights because even inclusion of the information that they allege was wrongfully omitted from his affidavit would not change the conclusion that there was probable cause to search the plaintiffs'

8

residence.  Alternatively, at a minimum, the plaintiffs have not alleged a clearly established violation of their Fourth Amendment rights because the "corrected" affidavit objectively provides arguable probable cause.  In either case, Tendler is entitled to qualified immunity on counts one and two of the complaint.

In counts one and two, the plaintiffs allege that Tendler procured a warrant to search their home without probable cause and the execution of that warrant led to constitutionally impermissible search and seizure. (Compl. ¶¶53, 62.)  In relevant part, the Fourth Amendment protects "the right of the people . . . against unreasonable searches and seizures." "While a search pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable . . . that presumption can be defeated by showing that a defendant (1) knowingly and deliberately, or with a reckless disregard of the truth, procured the warrant, (2) based on false statements or material omissions, that (3) were necessary to the finding of probable cause."  <u>Ganek v. Leibowitz</u>, 874 F.3d 73, 81 (2d Cir. 2017).

That is the plaintiffs' argument in this case, where they allege that Tendler knowingly made material omissions that were necessary to Judge Merriam's finding of probable cause.

> To determine whether a false statement was necessary to a finding of probable cause, we consider a hypothetical corrected affidavit, produced by deleting any alleged misstatements from the original warrant affidavit and

adding to it any relevant omitted information. See Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993); accord Escalera v. Lunn, 361 F.3d 737, 743–44 (2d Cir. 2004). If probable cause is lacking after such correction, then the false statement was "necessary" to secure issuance of the warrant. In that case, defendants would be entitled to qualified immunity only at the second step of analysis, i.e., if a similarly situated law enforcement official could have held an objectively reasonable—even if mistaken—belief that the corrected affidavit demonstrated the necessary probable cause. See Escalera v. Lunn, 361 F.3d at 744 (holding that if corrected affidavit provides "objective basis to support arguable probable cause, remaining factual disputes are not material to the issue of qualified immunity and summary judgment should be granted to the defendant on the basis of qualified immunity"). On the other hand, "if probable cause remains" after the warrant is corrected, plaintiff has suffered no violation of Fourth Amendment rights, and defendants would be entitled to qualified immunity and dismissal at the first step of analysis.

Ganek v. Leibowitz, 874 F.3d 73, 82 (2d Cir. 2017).

"Probable cause is not a high bar."  District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted); see also Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) ("probable cause to search is demonstrated where the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place").  "While probable cause requires more than a mere suspicion of wrongdoing, it does not require hard certainties. . . . Nor does it demand a prima facie case, or even a 'more likely than not' showing, of criminal activity."  Siddiqui v. Rocheleau, No. 3:18-CV-00839 (JCH), 2019 WL 12239678, at *5 (D. Conn. May 15, 2019), aff'd, 818 F. App'x 20 (2d Cir. 2020).

Tendler's affidavit in support of his application for a search warrant totaled 89 paragraphs over 31 pages.  As noted earlier, the plaintiffs allege four facts they claim were improperly omitted from the affidavit: (1) Smith's criminal history; (2) Smith's "extortion scheme"; (3) that Smith's letter was the origin of Tendler's investigation; and (4) that Smith was compensated by unidentified law enforcement for his information.  (Compl. ¶37.) Tendler's existing affidavit conclusively established probable cause to search the plaintiffs' property at 9 North Bank Street, and the hypothetical inclusion of the four paragraphs alleged by the plaintiffs does not alter the analysis.

All of the claimed omissions appear directed to an effort to impeach Smith's credibility, which the plaintiffs seem to believe was critical to the finding of probable cause.  The plaintiffs, however, are mistaken, since the substantial majority of the evidence obtained in the course of Tendler's investigation does not depend on Smith's credibility at all.  Specifically, the affidavit details the following evidence, none of which relies on Smith making truthful statements about the plaintiffs:

- On April 22, 2018, Department of Homeland Security personnel intercepted an international FedEx parcel containing approximately 1.5 kilograms of GBL, a schedule 1 narcotic, which parcel was addressed to 9 North Bank Street (Ex. A, ¶¶28-29);

- **On May 9, 2018, Connecticut Statewide Narcotics Task Force (SNTF) personnel, using a confidential informant, conducted a controlled purchase of one gram of methamphetamine from Canteen at 9 North Bank Street (Ex. A, ¶¶32-42);**

- **On May 23, 2018, Department of Homeland Security personnel intercepted an international DHL parcel containing approximately 1.55 kilograms of GBL, which parcel was addressed to 9 North Bank Street (Ex. A, ¶¶30-31);**

- **On June 5, 2018, SNTF personnel, using a confidential informant, conducted a controlled purchase of 3.5 grams of methamphetamine from Canteen at 9 North Bank Street (Ex. A, ¶¶43-52);**

- **On June 8, 2018, Postal Inspection Service personnel was alerted to a domestic U.S. Mail parcel containing approximately 29 grams of methamphetamine, which parcel was addressed to 9 North Bank Street (Ex. A, ¶¶53-55);**

- **On September 27, 2018, SNTF personnel, using a confidential informant, conducted a controlled purchase of methamphetamine from Canteen, who was under constant surveillance between his leaving 9 North Bank Street and the location of the controlled purchase (Ex. A, ¶¶56-63); and**

- **On October 16, 2018, SNTF personnel, using a confidential informant, conducted a controlled purchase of methamphetamine from an unknown individual who was under constant surveillance during the time the seller left 9 North Bank Street, arrived at the site of the controlled purchase, and returned to 9 North Bank Street.  (Ex. A, ¶¶64-73.)**

As these examples illustrate, Tendler did not attempt to secure the search warrant merely on Smith's word that illegal narcotics trafficking was taking place at 9 North Bank Street.  Rather, in the course of the investigation, law enforcement had successfully traced four controlled purchases of narcotics, as well as three separate parcels containing narcotics, to the 9 North Bank Street address.  In the face of that irrefutable evidence, the plaintiffs' limited impeachment information concerning Smith, as well as his purported reasons for sending the initial letter to the Postal Service, do not affect the probable cause analysis.  See United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993) ("An informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause.").

Given the strength of the evidence connecting 9 North Bank Street to narcotics trafficking,[2] "there can be no genuine dispute as to a reasonable

---

[2]The plaintiffs appear to believe that it is the connection of narcotics trafficking to the plaintiffs that is relevant to the probable cause

judicial officer issuing the challenged search warrant upon review of the corrected affidavit."  Ganek v. Leibowitz, 874 F.3d 73, 87 (2d Cir. 2017).  At a minimum, the strength of the evidence is more than enough to trigger "arguable probable cause," which entitles Tendler to qualified immunity "if either (a) it was objectively reasonable for [him] to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Siddiqui v. Rocheleau, No. 3:18-CV-00839 (JCH), 2019 WL 12239678, at *7 (D. Conn. May 15, 2019), aff'd, 818 F. App'x 20 (2d Cir. 2020).

In either case, Tendler is entitled to qualified immunity, and counts one and two should be dismissed as to him.

2.  <u>The Remaining Defendants are Entitled to Qualified Immunity</u>

As with Tendler, the complaint fails to state a claim that any of the remaining defendants violated the plaintiffs' constitutional rights to be free from unreasonable search and seizure.  Because "each Government official . . . is only liable for his or her own misconduct"; Iqbal, 556 U.S. at 677; a plaintiff is obligated to plausibly allege each individual defendant's

---

determination; see Compl. ¶¶31-32 (emphasizing lack of visual confirmation of transaction between Canteen and Smith); but that is not so. See Ganek v. Leibowitz, 874 F.3d 73, 86 (2d Cir. 2017) ("probable cause to search a location . . . for evidence of a crime does not require probable cause to think that the person whose premises is to be searched is himself a knowing participant in the criminal activity under investigation").

personal participation in the events giving rise to the lawsuit.  See, e.g., Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages.") (internal quotation marks omitted).

In this case, the plaintiffs do not allege that any defendant other than Tendler was involved in "procur[ing]" the relevant search warrant.  Rather, the plaintiffs explicitly contend that the remaining eleven defendants are liable for their alleged failures to intervene in Tendler's alleged violation of the plaintiffs' Fourth Amendment rights.  It is of course true that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014).  But for the reasons set forth above, even considering a "corrected" affidavit that included the information that the plaintiffs claim was improperly omitted, the search of 9 North Bank Street was supported by adequate probable cause as a matter of law.  Given that, the plaintiffs "cannot plausibly claim that [they] suffered constitutional harm from defendants' failure to correct a misstatement in a warrant affidavit that would have stated probable cause to search [the plaintiffs' residence] even on correction."  Ganek v. Leibowitz, 874 F.3d 73, 91 (2d Cir. 2017).

Moreover, allegations against a group of individual defendants that are devoid of any detail regarding which defendants did what are appropriately dismissed.  See Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy this minimum standard"); Ying Li v. City of New York, 246 F. Supp. 3d 578, 619-20 (E.D.N.Y. 2017) (failure to intervene claim dismissed where complaint "resorts to conclusory generalized allegations asserting her failure to intervene claim against every single Defendant and refers to the numerous defendants collectively").

As to the eleven defendants who are not Tendler, the plaintiffs allege literally nothing to differentiate them or explain what intervention the plaintiffs believe the defendants had a "realistic opportunity" to provide. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring").  That deficiency is particularly glaring here, where the only allegation of any substance as to the other defendants is that they executed the relevant search warrant (see Compl. ¶44), an event that obviously took place after the alleged misconduct by which the search warrant was procured.

16

Because the complaint fails to plausibly allege that the remaining defendants failed to intervene in the violation of their constitutional rights, they are entitled to dismissal of counts one and two.

### B.  All Defendants are Entitled to Qualified Immunity on the Plaintiffs' Malicious Prosecution Claims

The plaintiffs' allegations concerning malicious prosecution are deficient in multiple ways, and their failure to adequately plead a constitutional violation entitles all defendants to qualified immunity on count three.[3]

<u>First</u>, the plaintiffs characterize count three as "wrongful prosecution" in violation of the Sixth Amendment's alleged "due process right to be free from wrongful prosecutions without probable cause." (Compl. ¶71.)  But applicable precedent dictates that claims that a plaintiff has been maliciously prosecuted in violation of the Constitution arise under the <u>Fourth Amendment</u>, not the Sixth or under principles of due process.  <u>See</u> <u>Thompson v. Clark</u>, 142 S. Ct. 1332, 1337 (2022) (Supreme Court precedents recognize claim of malicious prosecution absent probable cause as violation of Fourth Amendment); <u>Manuel v. City of Joliet, Ill.</u>, 137 S. Ct. 911, 919, 197 L. Ed. 2d 312 (2017) ("If the complaint is that a

---

[3]There is ample reason to believe that a Fourth Amendment malicious prosecution claim is not cognizable under <u>Bivens</u> at all.  <u>See</u> <u>Selvam v. United States</u>, No. 20-CV-3299 (RPK), 2021 WL 5149809, at *3 (E.D.N.Y. Nov. 5, 2021) (noting split in authority).  Because of the pleading deficiencies in the plaintiffs' malicious prosecution claim, the court need not reach this issue.

form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); <u>Washington v. Cnty. of Rockland</u>, 373 F.3d 310, 316 (2d Cir. 2004) ("In <u>Albright v. Oliver</u>, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court, in a plurality opinion, determined that only violations of the Fourth Amendment could support § 1983 claims for malicious prosecution.").  Because the plaintiffs do not state a plausible Sixth Amendment claim for malicious prosecution, the defendants are entitled to qualified immunity on count three of the complaint.

 <u>Second</u>, even if the court were to allow the plaintiffs to pursue a Fourth Amendment malicious prosecution claim in this suit, the plaintiffs fail to plausibly plead the elements of such a claim.  In the § 1983 context (the applicable analogue if this type of claim may be brought under <u>Bivens</u>), the court previously has held in relevant part that "the elements of a malicious prosecution claim are that (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; [and] (2) the criminal proceedings have terminated in favor of the plaintiff . . . ." <u>Turner v. Boyle</u>, 116 F. Supp. 3d 58, 85 (D. Conn. 2015); <u>see also</u> <u>Thompson v. Clark</u>, 142 S. Ct. 1332, 1338 (2022) ("the gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause").

In this case, the plaintiffs do not allege with any specificity how the defendants – all of whom are federal officials for purposes of this <u>Bivens</u> suit – could be said to have "initiated or procured the institution of criminal proceedings against the plaintiff," when the only criminal proceedings brought against the plaintiffs were commenced by the State of Connecticut, not the United States of America.  Indeed, the complaint alleges only that the defendants procured (in Tendler's case) and executed (as to all defendants) a search warrant that "caused" the plaintiffs to be wrongfully prosecuted.  But that allegation is not sufficient.

"In general, [o]nce a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution."  <u>Butler v. Hesch</u>, No. 116CV1540MADCFH, 2020 WL 1332476, at *15 (N.D.N.Y. Mar. 23, 2020) (alteration in original; internal quotation marks omitted).  "While police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  <u>Bermudez v. City of New York</u>, 790 F.3d 368, 377 (2d Cir. 2015) (alteration in original; internal quotation marks omitted).  The plaintiffs here say nothing about how any of

**19**

the federal defendants in this case played any role (let alone an active one) in the plaintiffs' prosecution by the State of Connecticut.  Without more, the plaintiffs cannot plausibly allege that the defendants caused criminal proceedings to be initiated against them.  See Jorgensen v. Cnty. of Suffolk, 558 F. Supp. 3d 51, 63 (E.D.N.Y. 2021) ("When a plaintiff pursues a claim of malicious prosecution against police officers based on an unlawful arrest, the intervening exercise of independent judgment by a prosecutor usually breaks the chain of causation unless the plaintiff can show the prosecutor was misled or pressured by an officer") (internal quotation marks omitted)).

Moreover, the plaintiffs do not (and cannot) allege that criminal proceedings have terminated in their favor.  Indeed, state criminal charges against both of the plaintiffs remain pending.  See State v. Canteen, Superior Court, judicial district of New Haven, Docket No. N23N-CR18-0188434-S; State v. Lotto, Superior Court, judicial district of New Haven, Docket No. N23N-CR19-0220806-S.  As their charges have not terminated in their favor, it is black-letter law that they cannot bring a malicious prosecution claim.

Because the plaintiffs fail to plausibly allege a Fourth Amendment malicious prosecution claim, all defendants are entitled to qualified immunity and dismissal of count three of the complaint.

IV.     <u>**CONCLUSION**</u>

The plaintiffs in this case seek damages for alleged constitutional violations, but the complaint fails at every turn to plausibly plead a violation of their constitutional rights.  Because they have failed to plead those facts, all defendants are entitled to qualified immunity and dismissal of the complaint in its entirety.

Respectfully submitted,

Vanessa Roberts Avery
United States Attorney

     /s/
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T:  (860) 947-1101
F:  (860) 760-7979
john.larson@usdoj.gov