# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

|  |  |  |
|---|---|---|
| MICHAEL H. LOTTO et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 3:21-CV-1417 (VLB) |
| v. | ) | |
| | ) | |
| JEREMY S. TENDLER et al. | ) | ECF No. 29 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | JULY 11, 2022 |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' FRCP 12(b)(6) *MOTION TO DISMISS*

**COME NOW** the Plaintiffs in the above-captioned action, **MICHAEL H. LOTTO** and **ERNEST L. CANTEEN**, by and through Undersigned Counsel, and Hereby Respectfully Submit this *Memorandum of Law in Opposition to Defendants'* FRCP 12(b)(6) *Motion to Dismiss*, pursuant to *D. Conn. L. Civ. R. 7(a)(2)*.

### I. FACTUAL BACKGROUND

By three-count *Complaint* dated October 25, 2021, Plaintiffs brought this actions against twelve (12) individual members of federal law enforcement, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Each Defendant is sued in his individual capacity, for violations of Plaintiffs' *Fourth Amendment* rights to be free from unreasonable search (*Count One*) and unreasonable seizures (*Count Two*).

Beginning in November 2017 and through May 2018, Jason A. Smith[1], an inmate at Connecticut's Cheshire Correctional Institution, mailed frequent letters to Plaintiffs demanding that Plaintiffs deposit funds into Inmate Smith's inmate commissary account.  (*Compl*. ¶ 21).  When Plaintiffs refused to acquiesce, Inmate Smith's letters grew increasingly threatening and extortionate.  (*Id*. ¶ 22).  In March 2018, Inmate Smith began to threaten to contact Plaintiff Michael Lotto's employer, the United States Postal Service (USPS), with false allegations of wrongdoing, if Plaintiff's did not deposit money into Inmate Smith's inmate account.  (*Id.* ¶ 23).

In April 2018, Inmate Smith mailed a letter to the USPS, falsely alleging that Plaintiff Lotto was using his position with the USPS to ensure delivery of illicit items through the mail to Plaintiff Ernest Canteen, for sale and distribution.  (*Id*. ¶¶ 24–25).  In the letter, Inmate Smith falsely alleged that Plaintiffs would use the 'dark web' to order crystal methamphetamine and Gamma-Hydroxybutyric Acid ("GHB")[2], which Plaintiffs would receive through the mail with Plaintiff Lotto's assistance.  (*Id*.; *Search Warrant Aff*. ¶¶ 15–16) (appended as "Exhibit A" to *Defs.' Memo. in Supp. of Mot. to Dismiss*) (hereinafter, "*Defs.' Exhibit A*").  Based upon Inmate Smith's letter to the USPS, Defendant Jeremy Tendler, a United States Postal Inspector, opened a narcotics investigation into Plaintiffs.  (*Compl*. ¶ 26; *Defs.' Exhibit A* ¶¶ 14–20).

---

[1] Throughout Defendant Jeremy S. Tendler's *Search Warrant Affidavit*, which is appended as *Exhibit A* to Defendants' *Memorandum in Support of Motion to Dismiss*, Inmate Jason A. Smith is referred to as "Confidential Informant 1."

[2] A liquid depressant, utilized as a date-rape drug due to its hallucinogenic and memory-distortion effects.

During Defendant Tendler's investigation, in May 2018 members of the New Haven Police Department met with Inmate Smith at Cheshire Correctional Institution on two separate occasions.  (*Compl*. ¶ 27; *Defs.' Exhibit A* ¶ 22). Inmate Smith falsely informed law enforcement that Plaintiffs were also using the 'dark web' to purchase black tar heroin and counterfeit U.S. currency, in addition to methamphetamine and GHB.  (*Compl*. ¶ 27; *Defs.' Exhibit A* ¶ 22).  Inmate Smith was monetarily compensated by law enforcement for the false information that he provided during his interviews.  (*Compl*. ¶ 28).  Later, on June 8, 2018, U.S. Postal Inspectors in Los Angeles, California, intercepted a domestic Priority Mail Express package addressed to Inmate Smith, which was found to contain approximately 29 grams of crystal methamphetamine.  (*Defs.' Exhibit A* ¶¶ 53–55).

At the time that Inmate Smith provided the false information that prompted and contributed to Defendant Tendler's investigation, Inmate Smith was incarcerated as a result of his conviction for 3rd Degree Burglary, a Class D Felony pursuant to *Conn. Gen. Stat.* § 53a-103.  (*See Compl*. ¶ 29).  In addition, Inmate Smith has a lengthy history of convictions for crimes involving dishonesty, including, in the ten years prior to April 2018, convictions for: 6th Degree Larceny (2 counts); 2nd Degree Larceny; 3rd Degree Burglary (2 counts); and, 3rd Degree Identity Theft (2 counts).  (*Id.*)

Despite Inmate Smith's lengthy history of convictions for crimes of dishonesty, undermining any semblance of credibility and propensity for truthfulness, after his release from prison in August 2018, Defendant Tendler again utilized Inmate Smith for his investigation.  (*See id.* ¶ 30).  In September

2018, Inmate Smith was utilized to conduct an undercover, controlled purchase of narcotics, (*id*. ¶ 31; *Defs.' Exhibit A* ¶ 56), which did not occur at the place that was the subject of Defendant Tendler's search warrant, and there was no hand-to-hand contact or exchange witnessed by law enforcement observing the alleged transaction, (*see Compl*. ¶ 31; *see also Defs.' Exhibit A* ¶¶ 56, 60.)

Then, in October 2018, Inmate Smith was again utilized to conduct an undercover, controlled purchase of narcotics, (*Compl*. ¶ 32; *Defs.' Exhibit A* ¶ 64), which also did not occur at the place that was the subject of Defendant Tendler's search warrant application, and the alleged transaction witnessed by law enforcement was conducted with an unknown third party, (*see Compl*. ¶ 32; *Defs.' Exhibit A* ¶¶ 67, 69.)  Also notable, at about the same time as the October 2018 controlled purchase by Inmate Smith, a "light skin male… wearing a… jacket" was observed by law enforcement exiting the place that was the subject of Defendant Tendler's search warrant application, while a "male with dark complexion wearing… a dark colored sweater" was witnessed speaking and conducting a hand-to-hand exchange with Inmate Smith.  (*Defs.' Exhibit A* ¶¶ 67–69.)

On October 18, 2018, Defendant Tendler submitted a search warrant application and affidavit to then-Magistrate Judge Sarah A.L. Merriam, which contains extensive information obtained from Inmate Smith and forms a substantial part of Defendant Tendler's affidavit.  (*Compl*. ¶¶ 33–35; *see, generally*, *Defs.' Exhibit A*.)  Defendant Tendler did not disclose in the search warrant affidavit: that Inmate Smith was incarcerated for a crime of dishonesty

and had an extensive history of convictions for crimes of dishonesty; Inmate Smith's extortion scheme to extort money from Plaintiff's and Inmate Smith's threats to provide false information to the USPS about Plaintiff Lotto if Plaintiffs failed to comply with his demands; that Inmate Smith was paid for the false information that he provided to law enforcement about Plaintiffs; and, that Inmate Smith's letter to the USPS prompted Defendant Tendler to open the investigation into Plaintiffs.  (*Compl.* ¶¶ 37; *see, generally*, *Defs.' Exhibit A*.)

Relying upon Defendant Tendler's representations in the search warrant affidavit, and with the benefit of Defendant Tendler's omissions related to Inmate Smith's lack of credibility and propensity for untruthfulness, the Court issued the search warrant requested by Defendant Tendler, on October 18, 2018.  (*Compl.* ¶ 40; *id.* ¶¶ 38–39.)  Shortly thereafter, on October 25, 2018, Defendant Tendler and Defendants Lindberg, Bourdeau, Nason, Scichlione, Lebron, Coughlin, Brown, Martineau, Lathrop, Masetti, and Hartnet executed the search warrant.  (*Id.* ¶ 44.)  During the resulting search, Defendants: <u>did not</u> locate significant amounts of methamphetamine; <u>did not</u> locate any black tar heroin; <u>did not</u> locate any counterfeit US currency; <u>did not</u> locate any evidence that Plaintiff Lotto used his position with the USPS to facilitate the shipment of narcotics; and, <u>did not</u> locate any evidence that Plaintiff's utilized the 'dark web' to purchase narcotics or counterfeit US currency.  (*Id.* ¶¶ 45–46.)  Indeed, Plaintiffs were not arrested by Defendants on-site nor were Plaintiffs indicted or arrested by federal authorities at any time since the search.  (*Id.* ¶ 47.)

## II. LEGAL STANDARDS

### A. MOTION TO DISMISS

When considering a Rule 12(b) motion to dismiss, the Court must accept as true all factual allegations in the complaint and draw inferences from those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted. *Smith v. Local 819 I.B. T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citation omitted).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). "A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims which would entitle the plaintiff to relief. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654 (1999); *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) (quoting *Scheuer*, 416 U.S. at 236, *cert. denied*, 537 U.S. 1089 (2002).

"[T]he office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "A complaint should not be dismissed [under Rule 12(b)(6)] merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Bowers v. Hardwick*, 478 U.S. 186, 201 (1986), *overruled on other grounds*, *Lawrence v. Texas*, 539 U.S. 558 (2003); *see also* 5A C. Wright and A. Miller, Federal Practice and Procedure § 1357 at 336-37 (2d ed. 1990).

### B.  QUALIFIED IMMUNITY

Immunity defenses are intended to protect government actors from unnecessary expenses related to discovery and trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting in discussion of immunity defenses that even

discovery in civil rights suits "can be peculiarly disruptive of effective government").   Qualified immunity is a "good faith" immunity that protects government officials from civil liability insofar as their conduct does not violate "clearly established" statutory or constitutional rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818 (1982).

Defendants are entitled to qualified immunity only if "their [official] conduct does not violate clearly established... constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.  Under this standard, the Court must apply a two-prong analysis.  It must first decide, "as a threshold matter," whether the facts alleged, liberally construed, show a violation of a constitutional right.  If so, the Court then decides whether that right was "clearly established" at the time of the violation.  *Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III. ARGUMENT

Defendants <u>do not</u> argue in their *Motion to Dismiss* or supporting *Memorandum of Law* that Plaintiffs' claims arise in a new *Bivens* context.  Nor do Defendants argue that the rights Plaintiffs claim were violated by Defendants were not clearly established rights under the Constitution.  Indeed, Plaintiffs' claims that Defendant Tendler obtained a search and seizure warrant without

probable cause, by omitting material information about Inmate Smith's total lack of credibility, fall squarely within the *Fourth Amendment* rights of Plaintiffs.

Typically, the analysis of a proposed *Bivens* claim proceeds in two steps: A court asks first whether the case presents 'a new *Bivens* context'—i.e., "[is] the case [] different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017), and, second, even if so, do "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. This two-step inquiry resolves to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. Under the Supreme Court's precedents, a court may not *sua sponte* create a *Bivens* remedy if Congress already has provided, or has authorized the Executive branch to provide, "an alternative remedial structure." *Id*. at 1858.

A constitutional right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citation and quotation omitted). Plaintiffs need not demonstrate that "the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 251 (2d Cir. 2001) ("the absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly

established").  Nor need Plaintiffs identify legal precedent arising from "materially similar" facts to the case at bar.  *Hope*, 536 U.S. at 739.

Plaintiffs need only show that prior decisions gave "fair warning" that official conduct depriving someone of that right would be unconstitutional.  *Id.* at 740.  Government officials may have such fair warning "even in novel factual circumstances."  *Id.* at 741.  Prior decisions may "clearly foreshadow" a ruling that the challenged conduct is unconstitutional, *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362 (2d Cir. 2002) (internal citation and quotation omitted), or a previously announced "general constitutional rule" may apply "with obvious clarity to the specific conduct in question."  *United States v. Lanier*, 520 U.S. 259, 271 (1997).

While arising under different factual circumstances, the seminal precedent permitting claims against federal law enforcement for violations of constitutional rights, *Bivens*, also raised violations of *Fourth Amendment* rights. Unquestionably, Plaintiffs' claims do not arise in a new *Bivens* context.  Likewise, the peoples' *Fourth Amendment* rights to be free from unreasonable searches and seizures, absent a determination of probable cause by a neutral and detached magistrate, are clearly established rights under the *Fourth Amendment* to the Constitution.  Thus for purposes of Defendants' *Motion to Dismiss*, this Honorable Court need not undertake the typical analysis of Plaintiffs' *Bivens* claims.

Defendants move to dismiss Plaintiffs' *Complaint* in its entirety, on the basis of qualified immunity.   Defendants proffer two arguments for dismissal. Taking all allegations of the *Complaint* as true:

1) even with the inclusion of the missing information from the search warrant affidavit/application (or extrication of the wholly unreliable hearsay), there is still sufficient evidence in the search warrant affidavit to establish probable cause to issue the search warrant, *Defs.' Memo. in Supp. of Mot. to Dismiss* at 1, 8–9; and,

2) even if the search warrant affidavit/application does not establish probable cause with the inclusion of the missing information (or extrication of the unreliable information), it was objectively reasonable for the applicant to still reasonably believed there to be arguable probable cause, *id*. at 1, 9, 14.

Defendants ask this Honorable Court to make a threshold, factual determination that, taking all allegations of the *Complaint* as true, inclusion in the search warrant affidavit of the overwhelming evidence of Inmate Smith's lack of credibility, or extrication from the affidavit of all unreliable information learned from Inmate Smith, the affidavit still made a sufficient showing of probable cause to issue the search warrant.   For the reasons that follow, Plaintiffs Respectfully disagree with Defendants, and Defendants' *Motion to Dismiss* ought to be DENIED.

A.  THE AFFIDAVIT FAILS TO SHOW PROBABLE CAUSE TO
ISSUE A SEARCH WARRANT, IF ALL INFORMATION
KNOWN TO LAW ENFORCEMENT ABOUT SMITH'S LACK
OF CREDIBILITY IS INCLUDED, OR ALL UNRELIABLE
INFORMATION LEARNED FROM SMITH IS EXTRICATED

The *Fourth Amendment* to the U.S. Constitution protects "the right of the people... against unreasonable searches and seizures."  It is axiomatic under our law that a search absent a warrant is *de facto* unreasonable, unless an exception applies.  Of course, the converse is also true: a search conducted pursuant to a warrant is presumed reasonable, but that reasonableness can be challenged and defeated.  *See Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017).

The presumption of reasonableness of a search, "can be defeated by showing that a defendant (1) knowingly and deliberately, or with a reckless disregard of the truth, procured the warrant, (2) based on false statements or material omissions, that (3) were necessary to the finding of probable cause."  *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017).

Our Supreme Court has held that, "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of [the informant's] report."  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability."  *Adams v. Williams*, 407 U.S. 143, 147 (1972).  According to the Supreme Court,

> Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.  In order to ensure that such an abdication of the magistrate's duty does not occur,

> courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

*Gates*, 462 U.S. at 439.  The *Gates* Court further noted, in response to Justice

Brennan's dissenting opinion,

> probable-cause determinations… 'should not be authorized unless there is some assurance that the information on which they are based has been obtained in a reliable way by an honest or credible person."… [U]nder our opinion magistrates remain perfectly free to exact such assurances as they deem necessary, as well as those required by this opinion, in making probable-cause determinations.

*Id*. at 441.  The mandate from the *Gates* Court is ultimately that it is the

magistrate's responsibility

> to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id*. at 238.

Plaintiffs brought the instant suit alleging that Defendant Tendler's intentional withholding of all evidence related to Inmate Smith's credibility, deprived Magistrate Judge Merriam of information that is germane, material and crucial to a determination of probable cause, *Compl*. ¶ 34, and the extrication (or discrediting) of all information learned from Inmate Smith and included in the search warrant application, would have led any neutral and detached magistrate to determine that probable cause did not exist to issue the search warrant, *id*. ¶ 43.  Defendant Tendler's failure to include such information thus deprived Plaintiffs of their *Fourth Amendment* right to be free from unreasonable searches

and seizures, because probable cause did not exist to issue the search warrant that was eventually executed by Defendants.

At the time that Defendant Tendler made his testimony by affidavit and application for the search warrant, Defendant Tendler knew that Inmate Smith (Confidential Informant 1): 1) was incarcerated for a crime of dishonesty, 3rd degree Burglary, a Class D felony; 2) had an extensive criminal history, including numerous prior convictions for a cornucopia of crimes of dishonesty, and is a convicted felon several times over; 3) had engaged in a several-month long extortion scheme against Plaintiffs, including threats to contact Plaintiff Lotto's employer, the USPS, if Plaintiffs failed to make payments to Inmate Smith; 4) did in-fact contact Plaintiff Lotto's employer, the USPS, when Plaintiffs did not pay the money demanded, and it was that very contact from Inmate Smith that prompted Defendant Tendler's investigation; and, 5) that Inmate Smith was financially (monetarily) compensated by law enforcement for the information that Inmate Smith provided to them during the debriefings of Inmate Smith at Cheshire Correctional Institution.

Defendant Tendler withheld all of this information about Inmate Smith's credibility (or lack thereof) from his search warrant affidavit. *Compl*. ¶ 37. Defendant Tendler's omissions were intentional, *id*. ¶ 42, such that the Magistrate Judge was deprived of all opportunity to fairly assess the credibility of Inmate Smith (Confidential Informant 1).  Magistrate Judge Merriam could not possibly have made a fair assessment of the reliability of Inmate Smith's hearsay evidence in Defendant Tendler's search warrant affidavit, *id*. ¶¶ 37–39, 42–43, in the

absence of the information about Smith's credibility that Defendant Tendler omitted.   Defendant Tendler's search warrant affidavit relies heavily and extensively on information learned from Inmate Smith (Confidential Informant 1). *Id.* ¶ 34.

Notably, Defendant Tendler does not state in his search warrant affidavit that Inmate Smith is 'a known and reliable informant or source of information previously utilized by law enforcement and whose information has proven to be true in the past,' which is relatively common boiler-plate language in warrant affidavits.  *See, generally*, *Defs.' Exhibit A*.  Of course, Inmate Smith is not reliable nor a proven source of credible information.   Nonetheless, Defendant Tendler also did not include any of the information about Inmate Smith's extensive criminal history, record of convictions for crimes of dishonesty, and extortion scheme, which information is acutely germane and integral to the Magistrate Judge's assessment of the credibility of Inmate Smith.   *Compl.* ¶ 38).   Inmate Smith, a grossly unreliable and discredited character, provided the information that prompted Defendant Tendler to open an investigation, and Inmate Smith participated in two of the alleged undercover, controlled purchases, neither of which occurred at the place that was the subject of Defendant Tendler's search warrant application.

Defendants state that Defendant Tendler's search warrant affidavit "totaled 89 paragraphs over 31 pages," which Defendants offer as unequivocal proof that "the substantial majority of the evidence obtained in the course of [Defendant] Tendler's investigation does not depend on" the information obtained from

Inmate Smith.  *Defs.' Memo. in Supp. of Mot. to Dismiss* 11.  From this 'proof,' Defendants ask this Honorable Court to reach the *non-sequitur* conclusion that Defendant "Tendler's existing affidavit conclusively established probable cause" to issue the search warrant.  *Id.*

Defendants' attempt to reduce a probable cause determination to a mathematical calculation, however, is erroneous.  Defendant Tendler's search warrant affidavit does indeed contain 89 paragraphs—34 paragraphs of which contain information from or about Inmate Smith, and 29 paragraphs of which are typical boiler-plate recitals.  Extricating the 34 paragraphs in the affidavit with information from or about Inmate Smith, or discrediting those paragraphs of the affidavit because the information about Inmate Smith's lack of credibility is included, leaves less than half of the substantive paragraphs of the affidavit in consideration.  For Defendants to argue that "the substantial majority of the evidence obtained in the course of [Defendant] Tendler's investigation does not depend on" the information obtained from Inmate Smith, *id.*, is simply not true.

Defendant Tendler's investigation began because of an unsolicited letter mailed to the USPS containing allegations of wrongdoing against a USPS employee, Plaintiff Lotto.  Inmate Smith made the allegations as the culmination of over six-months of failed attempts to extort money from the USPS employee against whom the allegations were being made.  Inmate Smith was then paid to provide additional information for Defendant Tendler's investigation.  All while Inmate Smith was incarcerated for a Class D felony that is a crime of dishonesty, and has a lengthy record of convictions for crimes of dishonesty.

Any reliance on information coming from Inmate Smith is objectively unreasonable under these circumstances.  Defendant Tendler had an obligation to fully inform the magistrate of the information relating to the 'veracity' and 'basis of knowledge' of Inmate Smith's tips, as well as Inmate Smith's general lack of credibility.  In refusing to fully inform the magistrate of the significant information that militates against Inmate Smith's credibility, the magistrate was deprived of the opportunity to objectively make a probable cause determination in a neutral and detached manner, as is constitutionally required.

Inclusion of the discrediting information about Inmate Smith, and thus the discrediting of the information learned from Inmate Smith, leaves a bare-bones affidavit from Defendant Tendler that is not only wanting for additional credible information, but is wholly insufficient to establish probable cause to issue the search warrant.  Defendant Tendler's intentional, material omissions from the search warrant affidavit, to circumvent Magistrate Judge Merriam's neutral determination of probable cause, is a clear violation of Plaintiffs' *Fourth Amendment* rights to be free from unreasonable searches and seizures.

For these reasons, Defendants' *Motion to Dismiss* should be DENIED.

### B. DEFENDANT TENDLER'S BELIEF THAT HIS AFFIDAVIT SUFFICIENTLY SHOWED 'ARGUABLE PROBABLE CAUSE' IS NOT OBJECTIVELY REASONABLE

Even if the 'corrected affidavit,' with the information about Inmate Smith's total lack of credibility included and/or the information learned from Inmate Smith excluded, does not satisfy the probable cause requirement and would not have been issued by a neutral and detached magistrate, Defendant Tendler argues that

he is still entitled to qualified immunity and Plaintiffs' *Complaint* should be dismissed. Defendant Tendler asserts that even with the information about Inmate Smith's lack of credibility, it is objectively reasonable for Defendant Tendler to believe that his affidavit demonstrated arguable probable cause.

> Even if the corrected affidavit does not establish probable cause, a defendant may still be entitled to qualified immunity… 'if a similarly situated law enforcement official could have held an objectively reasonable—even if mistaken—belief that the corrected affidavit demonstrated the necessary probable cause.'

*Siddiqui v. Rocheleau*, Docket No. 3:18-CV-00839 (JCH), 2019 U.S. Dist. LEXIS 238015, at *16 (D. Conn. May 15, 2019) (*quoting Ganek*, 874 F.3d at 82). "Said another way, even in the absence of probable cause, an officer will still be entitled to qualified immunity if the corrected affidavit establishes 'arguable probable cause.'" *Id*. (internal citations omitted).

> Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' While the "arguable probable cause standard is 'more favorable' to officers than the probable cause standard, it is 'not toothless': qualified immunity will not apply if reasonable officers 'would have to agree' that the corrected affidavit does not provide a basis for a probable cause finding.

*Id*. at *17.

"In applying the corrected-affidavit doctrine, qualified immunity is warranted only if, after correcting for the false or misleading statements, the affidavit accompanying the warrant was sufficient 'to support a reasonable officer's belief that probable cause existed.'" *Southerland v. City of New York*,

680 F.3d 127, 144 (2d Cir. 2011) (*quoting Martinez v. City of Schenectady*, 115 F.3d
111, 115 (2d Cir. 1997).

The factual underpinnings and bases that strongly mitigate against the
presence of arguable probable cause to an objectively reasonable law
enforcement officer, are no different for this second-prong of the Defendants'
qualified immunity claim, than they were for the first-prong.  Plaintiffs' analysis,
above, of the information intentionally withheld by Defendant Tendler from his
search warrant application, if included in a corrected affidavit, resulting in the
discrediting of the information from Inmate Smith, eviscerates any reasonable
notions of probable cause, applies in equal measure to this second-prong of the
immunity analysis.  *Supra* 8–17.

Inmate Smith totally lacks all credibility and has an overwhelming
propensity for dishonesty, as evidenced by his extensive criminal record of
convictions for crimes of dishonesty, his then-present incarceration on a
conviction for a felony crime of dishonesty, his continuous over six-month
extortion scheme to extort money from Plaintiffs by threatening to contact
Plaintiff Lotto's employer, that Inmate Smith did in-fact contact Plaintiff Lotto's
employer when Plaintiffs refused his extortion demands, and the fact that it was
the very letter from Inmate Smith to Plaintiff Lotto's employer because Plaintiffs
did not bow to his extortion scheme that prompted Defendant Tendler to begin
his investigation.

It is inconceivable that any law enforcement officer could look at a
corrected affidavit that includes all of this information about Inmate Smith's total

lack of credibility, and still credit any information at all received from Inmate Smith.  It is therefore not objectively reasonable for Defendant Tendler or any law enforcement officer to look at such a corrected affidavit and discern a sufficient showing of arguable probable cause.

As such, Defendants are not entitled to a defense of qualified immunity under the second-prong of the test, and Defendants' *Motion to Dismiss* should be DENIED.

### C. THE ELEVEN OTHER FEDERAL LAW ENFORCEMENT DEFENDANTS IN ADDITION TO DEFENDANT TENDLER, ARE PROPERLY NAMED AS DEFENDANTS

The Second Circuit has emphasized the difficulty of prevailing on a motion to dismiss (as opposed to a motion for summary judgment) based on qualified immunity for lack of personal involvement.  In *McKenna v. Wright*, 386 F.3d 432 (2d. Cir. 2004), the court held that a supervisory official presenting a qualified immunity defense "on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route... .  Thus, the plaintiff [at the time of the Rule 12(b)(6) motion] is entitled to all reasonable inferences from the facts alleged."  *Id.* at 436.

"[A]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable."  *Wong v. Beebe*, 2002 WL 31548486, at *14 (D. Or. Apr. 5, 2002) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause

others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743-44; s*ee also Prof'l Ass'n of Coll. Educators v. El Paso County Cmty. Coll. Dist.*, 730 F.2d 258, 266 (5th Cir. 1984) (holding college president liable for retaliatory termination of professor, although final action taken by trustees).

Defendants Lindberg, Bourdeau, Nason, Scichlione, Lebron, Coughlin, Brown, Martineau, Lathrop, Masetti, and Hartnet, participated in the execution of Defendant Tendler's search warrant, which objectively failed to establish probable cause when the omitted credibility and veracity evidence is included. These Defendants actively participated in an unreasonable search, at Defendant Tendler's behest, which deprived Plaintiffs of their *Fourth Amendment* rights to be free from unreasonable searches.   Similarly, these Defendants likewise participated in the unreasonable seizure of Plaintiffs' persons and property, at Defendant Tendler's behest, which deprived Plaintiffs of their *Fourth Amendment* rights to be free from unreasonable seizures.

Defendants proffer a quasi-superior-orders-defense—a lemming defense— in support of their claim for qualified immunity.  Defendants maintain that they were simply blindly following Defendant Tendler into an abyss of violations of Plaintiffs' constitutional rights; in their view, Defendants are entitled to qualified immunity because they did not participate in Defendant Tendler's affidavit and application for search warrant.

At the core of Defendants argument, is that the constitutional harm in the case at bar, if one exists at all, was Defendant Tendler's omission of the credibility information from the affidavit, and Defendants did not play a part in

Defendant Tendler's omissions from the affidavit nor Defendant Tendler procuring a search warrant without probable cause.  *See Defs.' Memo. in Supp. of Mot. to Dismiss* 15.  But Defendants miss the mark slightly with this argument. Certainly, Defendant Tendler's omissions from the affidavit led to the issuance of a search warrant that otherwise lacked probable cause; however, the actual violation and deprivation of Plaintiffs' *Fourth Amendment* rights are the *unreasonable searches* of Plaintiffs' property and the *unreasonable seizures* of both Plaintiffs' property and persons.

But here the Plaintiffs allege that the Defendants failed to intervene to prevent Defendant Tendler from violating Plaintiffs' rights.  Defendants Lindberg, Bourdeau, Nason, Scichlione, Lebron, Coughlin, Brown, Martineau, Lathrop, Masetti, and Hartnet actively participated in the illegal and unreasonable search of Plaintiffs' property, and they actively participated in the illegal and unreasonable seizures of Plaintiffs' property and persons.  These eleven (11) Defendants did not just blindly follow behind Defendant Tendler.

At every step or stage prior to execution of the search, and indeed even during execution of the search, any one of the eleven other Defendants could have intervened to prevent the violations of Plaintiffs rights.  Unquestionable, "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). Each and every one of these eleven (11) Defendants participated in the unreasonable search and unreasonable seizures, and each and every one failed

to intervene to prevent Defendant Tendler, or indeed to prevent any of the other Defendants, from violating Plaintiffs' rights.

Defendants Lindberg, Bourdeau, Nason, Scichlione, Lebron, Coughlin, Brown, Martineau, Lathrop, Masetti, and Hartnet failed to intervene to prevent violations of Plaintiffs' rights under the Fourth Amendment, and the *Motion to Dismiss* as to these Defendants should also be DENIED.

### D. PLAINTIFFS' MALICIOUS PROSECUTION CLAIMS IN COUNT THREE OUGHT TO BE DISMISSED

*Count Three* of Plaintiffs' *Complaint* alleges malicious prosecution, erroneously plead pursuant to the *Sixth Amendment*. As argued in Defendants' *Motion to Dismiss* and supporting *Memorandum of Law*, *Count Three* should have properly been plead under the *Fourth Amendment*.

Nevertheless, Plaintiffs concede that *Count Three* of the *Complaint* should properly be dismissed, even if properly plead under the *Fourth Amendment*, as the COVID-19 Pandemic has extended Plaintiffs' state-court criminal prosecutions through the present. As a result, Plaintiffs are unable to plead a favorable disposition or termination of Plaintiffs' respective criminal matters, which is a required element of a claim for malicious prosecution.

### IV. CONCLUSION AND PRAYER

WHEREFORE, for the foregoing reasons, Plaintiffs MICHAEL LOTTO and ERNEST CANTEEN Respectfully Object to Defendants *Motion to Dismiss*, and MOVE this Honorable Court to DENY the same.

**RESPECTFULLY SUBMITTED,**
**THE PLAINTIFFS,**
**BY THEIR ATTORNEY,**

 /S/  Michael J. Habib, Esq. (CT29412)
**MICHAEL J. HABIB, ESQ.** (CT29412)
Willcutts & Habib LLC
100 Pearl St., Fl. 14
Hartford, CT 06103-4500
Tel: (860) 249-7071
Fax: (860) 863-4625
E-Mail: Mike@InzitariLawOffice.com