UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL H. LOTTO et al., | : | Case No. 3:21-cv-1417(VLB) |
|    Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JEREMY S. TENDLER et al., | : | |
|    Defendants. | : | August 1, 2022 |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Pursuant to Local Civil Rule 7(d), the defendants submit this reply to the plaintiffs' memorandum in opposition (document no. 29) to the defendants' motion to dismiss the complaint.

The defendants' opposition fails to address the overwhelming evidence of illegal narcotics trafficking occurring at the subject property, which evidence was independent of any information that was provided by Jason Smith, the allegedly untrustworthy and biased informant whose letters led to the Government opening the relevant investigation in this case. Because of that independent evidence, even if all of the alleged impeachment information pertaining to Smith were included in the search warrant application, and even if the plaintiffs are correct that the information obtained from Smith were discredited, a reasonable magistrate would have concluded that there was probable cause to issue the search warrant; in the alternative, there was arguable probable cause as a matter

of law.  In either case, the defendants are entitled to qualified immunity and dismissal of the complaint.

Additionally, all of the defendants apart from Tendler – in other words, those defendants who did not procure the search warrant at issue in this case – are entitled to qualified immunity for another reason. Specifically, the plaintiffs allege only that they assisted in executing a warrant that they believe was unconstitutional.  But they do not allege that any of the remaining defendants procured the search warrant; consequently, the remaining defendants were entitled to rely on its facial validity, and no other allegations in the complaint compel a different result.

I. **The Search Warrant Affidavit Contains Overwhelming and Independent Evidence of Drug Trafficking at the Subject Premises**

The plaintiffs' opposition largely repeats the central thesis of their complaint, namely, Smith was not a trustworthy informant, the information he provided was not worthy of credit, and the inclusion of information impeaching his credibility would have led a reasonable magistrate to decline to find probable cause to search the plaintiffs' residence.[1]  (See

---

[1] In addition to their allegations regarding Smith's credibility, the plaintiffs also complain that Tendler's affidavit did not disclose that "Smith's letter to the USPS prompted Defendant Tendler to open the investigation into Plaintiffs." (Opp., 5.) Tendler's affidavit, however, explicitly describes the history of "the instant investigation," which began "in or around April of 2018," and further explains that "[o]n or about April 24, 2018," USPS received the letter from Smith, from which point the investigation proceeded. (Ex. A., ¶¶14-15.) And in any event, regardless of what prompted the investigation, the investigation itself uncovered

Opp., 13 ("Defendant Tendler's failure to include such information thus deprived Plaintiffs of their Fourth Amendment right to be free from unreasonable searches and seizures, because probable cause did not exist to issue the search warrant that was eventually executed by Defendants.") In making that argument, the plaintiffs drastically overstate the importance of Smith's credibility to the probable cause finding and completely ignore the considerable evidence of drug trafficking activity at the plaintiffs' residence that did not depend at all on Smith's credibility.

      For example, the plaintiffs' opposition ignores government officials having intercepted parcels containing narcotics bound for 9 North Bank Street on April 22, 2018 (1.5 kilograms of GBL), May 23, 2018 (1.55 kilograms of GBL), and June 8, 2018 (29 grams of suspected methamphetamine). (Ex. A., ¶¶28-29, 30-31, 53-55.) The plaintiffs' opposition also does not discuss two controlled purchases of narcotics on May 9, 2018, and June 5, 2018, where Plaintiff Canteen sold methamphetamine to confidential informants other than Smith at 9 North Bank Street. (Id. ¶¶32, 43.) Put another way, Tendler's affidavit details five separate occasions where government officials obtained evidence of narcotics trafficking involving 9 North Bank Street, not one of which had anything to do with Smith or in any way depended on his credibility.

---

significant independent evidence of wrongdoing that involved the subject property, as set forth in greater detail below.

But that is not the only evidence that the affidavit offered that did not rely on Smith's credibility. Rather, there were still two more controlled purchases performed by Smith under surveillance of law enforcement personnel. The plaintiffs' opposition at least acknowledges this evidence, but their efforts at explaining it away are unavailing.

<u>First</u>, the plaintiffs seem to discount a September 2018 controlled buy because it "did not occur at the [subject property]" and for which "there was no hand-to-hand contact or exchange witnessed by law enforcement." (Opp., 4.) The plaintiffs ignore the fact that even though the purchase did not occur at the subject property, law enforcement personnel witnessed Plaintiff Canteen exit the subject property, where he remained under constant visual surveillance until arriving at the site of the controlled purchase. (Ex. A., ¶60.) Law enforcement personnel also coordinated the controlled purchase with Smith, searching and surveilling him as part of the purchase. (<u>Id.</u>, ¶¶59-61.)

Second, the plaintiffs also try to discount an October 2018 controlled purchase because it too "did not occur at the [subject property]" and because the "transaction witnessed by law enforcement by law enforcement was conducted with an unknown third party." (Opp., 4.) But again, the plaintiffs ignore that law enforcement personnel observed the unknown third party exit the subject property, sell the narcotics to Smith, then return to the subject property. (Ex. A. ¶¶67-70.)

Ultimately, the plaintiffs would have the court conclude that an evidentiary record omitting any information provided by Smith – which record would contain three separate interceptions of drug parcels addressed to the plaintiffs' residence, in addition to four separate controlled purchases of narcotics, all of which either occurred at the plaintiffs' residence or were from a person who had been tracked from that location – somehow would be insufficient to support of a finding of probable cause by a neutral, detached magistrate.  Probable cause, however, is not nearly so stringent, and the defendants respectfully urge the court to decline the plaintiffs' invitation to turn probable cause into exactly the "high bar" that the Supreme Court has rejected.  See District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018).

In sum, even assuming, arguendo, the inclusion of information impeaching Smith's credibility would cause a reasonable magistrate to discredit all of the information that Smith provided, "this is not a case in which there was no evidence"; Ganek v. Leibowitz, 874 F.3d 73, 86 (2d Cir. 2017); of narcotics trafficking at 9 North Bank Street.  Rather, the substantial evidence of trafficking that did not depend on Smith's credibility would lead a reasonable magistrate judge to find probable cause and issue the search warrant anyway.  At bare minimum, a reasonable law enforcement officer could have concluded that there was probable cause

based only on the evidence that did not relate to Smith.[2] In either case, Tendler and the remaining defendants are entitled to qualified immunity, and the court should dismiss counts one and two of the complaint.[3]

## II. The Plaintiffs Fail to Allege Constitutional Violations on the Part of the Remaining Defendants

In addition to allegations pertaining to Tendler specifically, the plaintiffs contend that the remaining defendants are liable for violating the plaintiffs' constitutional rights because the remaining defendants participated in the execution of a search warrant that the plaintiffs claim was constitutionally defective. (Opp., 20-21.) But the plaintiffs' argument ignores that a "search is presumptively reasonable when executed

---

[2]The plaintiffs appear to misunderstand the "arguable probable cause" inquiry when they contend that no reasonable law enforcement officer could conclude that Smith was a credible informant in the face of the information available that impeached his credibility. (See Opp., 19-20.) But that narrow question is not the relevant inquiry; rather, the relevant question is whether even with that impeaching information included, a reasonable law enforcement officer could conclude that the hypothetical affidavit overall provided probable cause to issue the search warrant. See Ganek v. Leibowitz, 874 F.3d 73, 82 (2d Cir. 2017) (qualified immunity for arguable probable cause "if a similarly situated law enforcement official could have held an objectively reasonable—even if mistaken—belief that the corrected affidavit demonstrated the necessary probable cause"). As such, and as was the case above, the plaintiffs' argument ignores the considerable evidence of drug trafficking at 9 North Bank Street that has nothing to do with Smith's credibility.

[3]With respect to alleged "seizure" of the plaintiffs occurring in the execution of the search warrant that is the subject, in part, of count two of the complaint (see Compl. ¶¶60-65), it is axiomatic that "[l]aw enforcement officers executing a search warrant are privileged to detain individuals . . . while the search is carried out." Belton v. Wydra, No. 3:17-CV-02006 (KAD), 2021 WL 1056770, at *8 (D. Conn. Mar. 18, 2021) (citing Muehler v. Mena, 544 U.S. 93, 98 (2005)).

6

pursuant to a warrant" and that as a result a law enforcement officer "who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity." Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 286 (S.D.N.Y. 2015) (internal quotation marks omitted). The plaintiffs do not allege that anyone other than Tendler participated in procuring the search warrant or had anything to do with the alleged omissions. Consequently, all other defendants were entitled to rely on the presumptive validity of the search warrant, and they therefore are entitled to qualified immunity.

The plaintiffs also continue to argue that the remaining defendants are liable for their failure "to intervene to prevent Defendant Tendler, or indeed to prevent any of the other Defendants, from violating Plaintiffs' rights." (Opp., 22-23.) That argument is similarly unavailing, since it continues to ignore the plaintiffs' failure to plead facts demonstrating that the defendants had a realistic opportunity to intervene. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring"). To the extent that the plaintiffs argue that the failure to intervene occurred when Tendler was procuring the search warrant, they do not explain how any other defendant could reasonably have intervened in a process in which none of them were involved. To the extent that the plaintiffs argue that the failure to intervene occurred during

7

execution of the allegedly deficient search warrant, the plaintiffs' argument fails to appreciate that as set forth above, all of the remaining defendants were entitled to rely on the facial validity of the search warrant.

In either case, the remaining defendants are entitled to qualified immunity for the additional reasons set forth above.

For the reasons set forth above, and in the defendants' original memorandum of law, the defendants respectfully urge the court to dismiss the complaint.

Respectfully submitted,

Vanessa Roberts Avery
United States Attorney

   /s/
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T:  (860) 947-1101
F:  (860) 760-7979
john.larson@usdoj.gov